IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TWIN PINES COAL COMPANY, INC. )
and RGGS LAND & MINERALS, LTD.,)
L.P., a Delaware limited Partnership, )
                               )
      Plaintiffs,           )
                               )     CASE NUMBER:
v.                          )
                               )
COLONIAL PIPELINE COMPANY, )
                               )
      Defendant.         )

## COMPLAINT
### Parties

1.     Twin Pines Coal Company, Inc., hereinafter referred to as ("Twin Pines"), is an Alabama corporation with its principal place of business in Jasper, Walker County, Alabama, mining coal by the surface mining method in Walker and Shelby Counties, Alabama.

2.     RGGS Land & Minerals, Ltd., L.P., hereinafter referred to as ("RGGS"), is a Delaware limited partnership, which owns certain mineral interests at issue in this matter.

3.     Colonial Pipeline Company, hereinafter referred to as ("Colonial") is a Delaware corporation with its principal place of business in Atlanta, Georgia and at all times pertinent to this Complaint was and is doing business in Alabama by and through the operation of a pipeline running through Shelby County, Alabama transmitting various petroleum products.

## Jurisdiction and Venue

4.     Plaintiffs adopt and re-allege all prior paragraphs of this Complaint as if set forth fully herein.

5.     The Court has subject matter jurisdiction over the parties to this cause pursuant to Title 28 USC 1332 (a)(1) based on diversity of citizenship. The amount in controversy exceeds $75,000.00.

6.     Venue is proper in this district and division pursuant to Title 28 USC 1391(c) since defendant is subject to personal jurisdiction in the State of Alabama and is a corporation doing business in the State of Alabama. Additionally, defendant's business in the State of Alabama with respect to this matter arises out of the performance of a contract within the State of Alabama and specifically within this district and division.

## Statement of Facts

7.     Twin Pines is in the business of mining coal by the surface mining method in an area of property located in Shelby County, Alabama known as the Dry Creek Reserve. RGGS owns the coal and other minerals on the property located in Shelby County, Alabama known as the Dry Creek Reserve. A legal description for the Dry Creek Reserve is included in the Agreement as if fully set out. (See attached Legal Agreement, Exhibit "A").

8.     On the 20th day of August, 2007 and the 28th day of November, 2007, Twin Pines entered into Mineral and Surface Leases  with RGGS and United States Steel Corporation ("USSC"), giving Twin Pines the right to remove the coal contained in the

2

leased property, generally known as the Dry Creek Reserve.

9. Colonial's petroleum product transmission line traverses the Dry Creek Reserve and affects the minerals and surface leased to Twin Pines by RGGS. A map of the Dry Creek Reserve showing the pipeline is attached hereto and included herein as if fully set out. (See attached Pipeline Map, Exhibit "B").

10. Colonial's right to construct operate and maintain its pipeline through the Dry Creek Reserve derives from an Agreement with USSC dated July 20, 1962, (the "Agreement"). The Agreement was amended after that date but the amendment is not germane to the issues raised in this suit. A copy of the original Agreement is attached hereto and incorporated herein by reference as if fully set out. (Exhibit "A").

11. In pertinent part, the original Agreement, and its Amendment allowed Colonial to construct, operate, and maintain two pipelines within a defined area of the Dry Creek Reserve, subject to reservations and retained rights of USSC and its successors and assigns, which include RGGS and Twin Pines.

12. Under Paragraph 8 of the Agreement, which was not affected by any amendment and is still in full, force and effect, USSC for itself and its successors and assigns, which includes RGGS and Twin Pines, reserved and retained the following:

Paragraph 8.
The Steel Corporation reserves to itself all coal, iron ore, oil, gas and other minerals contained in said land together with the right to mine and remove the same and Colonial hereby releases the Steel Corporation from all liability to Colonial, its successors or assigns, on account of damage to said pipeline accruing from past or future removal of coal, iron ore, oil, gas or other

3

minerals contained in said land or from failure to leave adequate support for the surface of said land. While the foregoing reservation of minerals and mining rights and releases from damages are intended to leave the Steel Corporation in a position to mine and remove the coal and other minerals in its lands in which said pipeline will be located. The desirability of attempting to protect the pipeline from actual damage resulting from such mining and removal has been considered prior to the making of this contract and in order to attempt to provide such protection but without any way limiting said release from damages, the Steel Corporation hereby agrees to give Colonial reasonable notice of any planned mining operations which in the judgment of the Steel Corporation could result in damage to Colonial's pipeline and Colonial shall promptly advise the Steel Corporation whether or not it wishes the Steel Corporation to leave in the ground such coal or other minerals as may be needed to attempt to protect the pipeline from damage and if so, Colonial shall pay the Steel Corporation an amount equal to the value of such coal or other minerals as determined by the Steel Corporation promptly upon notice of an invoice therefore. Nothing herein contained shall be construed to abridge the Steel Corporation's right to install facilities across said pipeline as provided in Paragraph 9 below.

13. By letter agreement, Twin Pines has succeeded to the right to enforce the Agreement and collect from Colonial any and all monies due USSC pursuant to the Agreement. A copy of the Letter Agreement between Twin Pines and USSC is attached hereto and incorporated herein by reference as if fully set out as Exhibit "C". RGGS seeks to enforce its rights as a successor to USSC pursuant to the Agreement.

14. Beginning in March 2008, Twin Pines, with consent of RGGS and USSC and as required by the Agreement, provided Colonial with reasonable notice that it intended to conduct mining operations and activities which might effect Colonial's pipeline in the Dry Creek Reserve.

15. A meeting was held on June 20, 2008, where representatives of Twin Pines,

4

its blasting contractor, Nelson Brothers, and Colonial met to discuss the proposed mining.

16. On July 7, 2008, Twin Pines notified Colonial in writing of its intent to mine and requested that Colonial provide it with the setback requirements as contained in the Agreement.

17. Thereafter, approximately eight more months passed without Colonial giving to Twin Pines a setback as required under Paragraph 8 of the Agreement.

18. Not until March 13, 2009, did Colonial provide setback limits and then only to a portion of the area affected.

19. Pursuant to the Agreement, Twin Pines provided an invoice to Colonial for a portion of the coal affected by Colonial's partial setback limits. The invoice was for $37,624,657.00. The invoice is attached hereto and incorporated by reference as if fully set out as Exhibit "D". Twin Pines has not invoiced Colonial for all of the coal in the Dry Creek Reserve which may ultimately be affected by Colonial's pipeline and it and RGGS reserve the right to make additional claims in the future as their interest may dictate for coal not covered by the invoice which is the basis of this suit.

20. Pursuant to the Agreement, Colonial was required to pay Twin Pines' invoice promptly upon its receipt . Instead of paying the invoice, Colonial delayed and instead requested Twin Pines provide it certain financial and mining information on which the invoice was calculated. This was not required under the Agreement, but in a spirit of cooperation Twin Pines provided information regarding finances and reserves which showed

5

the calculations upon which the above referenced invoice was based.

21.    As of the date of the filing of this Complaint, Colonial has failed to pay the amounts equal to the value of the coal promptly upon notice of an invoice therefor as required by the Agreement.

22.    Due to Colonial's failure to promptly provide set back limits for mining as required in the Agreement, Twin Pines was required to relocate its mining operations to another location not affected by the pipeline in order to fulfill its contractual obligations with its customers. Based on Colonial's lack of cooperation and failure to perform under the Agreement, Twin Pines has ceased paying royalty payments to RGGS.

## COUNT I
### Breach of Contract
### Failure to Pay Invoice

23.    Plaintiffs adopt and re-allege all prior paragraphs of this Complaint as if set forth fully herein.

24.    Colonial is in breach of the Agreement for failure to promptly establish setback limits when requested and to promptly pay Twin Pines' invoice upon request as provided for in the Agreement.

25.    As a result of Colonial's breach, Twin Pines and RGGS have suffered damages. Because of Colonial's breach, Twin Pines has ceased paying royalty payments to RGGS and Colonial has refused to make payments for the coal evidenced in Twin Pines' invoice upon request totaling $37,624,657.00.

6

## COUNT II
## Breach of Contract
## Mobilization and Demobilization Costs

26.     Plaintiffs adopt and re-allege all prior paragraphs of this Complaint as if set forth fully herein.

27.     Pursuant to the Agreement, Colonial was required to promptly advise Twin Pines with respect to setback limits from Colonial's pipeline in order to protect Colonial's pipeline from potential damage resulting from mining operations.

28.     In breach of the Agreement, Colonial did not provide setback limits in a timely manner and has refused to properly provide setback limits to all potential affected areas.

29.  As a result of Colonial's failure and refusal to promptly establish setback limits as required by the Agreement, Twin Pines has been damaged. As a result of Colonial's breach of the Agreement, Twin Pines has incurred expenses for engineering, permitting, mapping, surveying, evaluating, mobilization, demobilization and stopping ongoing mining activities as part of the requirement to move and relocate mining operations to another area within the Dry Creek Reserve not otherwise in the vicinity of the pipeline.

7

Respectfully submitted,

Edward R. Jackson (asb-6899-S53E)
Attorney for Twin Pines Coal Company, Inc.
ejackson@jacksonandfikes.com

OF COUNSEL:

JACKSON, FIKES, HOOD & BRAKEFIELD
P. O. Box 748
Jasper, Alabama 35502-0748
Telephone: (205)387-2171
Facsimile: (205) 387-2174

_s/ Jane L. Calamusa
Jane Margaret Laird Calamusa (CALAJ-5640)
Attorney for RGGS Land & Minerals Ltd., L.P.
jcalamusa@rosenharwood.com

OF COUNSEL:
ROSEN HARWOOD, P.A.
2200 Jack Warner Pkwy., Ste. 200
Tuscaloosa, Alabama 35401
Telephone: (205) 344-5000
Facsimile: (205) 758-8358

## PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL COUNTS

## SERVICE ON DEFENDANT VIA CERTIFIED MAIL:

Colonial Pipeline Company
c/o CSC-Lawyers Incorporating Service, Inc.
150 South Perry Street
Montgomery, Alabama 36104

8

# EXHIBIT "A"

THIS CONTRACT, entered into this 20th day of July

1962, by and between the UNITED STATES STEEL CORPORATION, a New Jersey corporation, hereinafter referred to as the "Steel Corporation" and COLONIAL PIPELINE COMPANY, a Delaware corporation, hereinafter referred to as "Colonial";

WITNESSETH:

(1) In consideration of the sum of Eleven Thousand Seven Hundred and 99/100 Dollars ($11,799.99) paid to the Steel Corporation by Colonial, receipt whereof is acknowledged, and in further consideration of the covenants of Colonial as hereinafter expressed to be kept and performed, the Steel Corporation, to the extent of its ownership, hereby grants to Colonial the right to construct, operate, maintain, and remove a pipe line not in excess of thirty-six (36) inches in diameter, for the transportation of petroleum products, upon a right of way easement herein granted, same being fifteen (15) feet in width on the northwesterly side of said pipe line and thirty-five (35) feet in width on the southeasterly side of said pipe line as measured from the center line of said pipe line as installed, upon and across land of the Steel Corporation in Section 31, Township 20 South, Range 3 West, Section 6, Township 21 South, Range 3 West, and Sections 1, 2, 9, 10, 11 and 17, Township 21 South, Range 4 West, Shelby County, Alabama, the approximate location of said pipe line being shown by red line on map attached hereto and made a part hereof. Said location is in accordance with plans heretofore submitted by Colonial to the Steel Corporation and no substantial deviation therefrom shall be made without the prior written consent of the Steel Corporation.

(2) For said considerations, the Steel Corporation, to the extent of its ownership further grants to Colonial the right to use during construction of said pipe line: (a) a strip of land ten (10) feet wide on the northwesterly side of said pipe line, the southeasterly boundary of said strip of land being parallel to and fifteen (15) feet northwesterly of the center line of said pipe line; and (b) a strip of land fifteen (15) feet wide on the southeasterly side of said pipe line, the northwesterly boundary of said strip of land being parallel to and thirty-five (35) feet from said center line. The right to use said strips of land shall terminate six (6) months after completion of construction of said pipe line and Colonial shall, after the completion of construction, restore the surface of said strips to the extent of the damage done thereto in the course of construction of said pipe line.

(3) For said considerations, the Steel Corporation further grants to Colonial such rights of ingress and egress over land of the Steel Corporation over which said pipe line is located as may be reasonably necessary for the exercise by Colonial of the rights herein granted. The Steel Corporation, however, reserves the right from time to time to designate the route or routes for such ingress and egress, provided that any route so designated shall provide reasonably convenient access to said pipe line.

(4) For said considerations, the Steel Corporation further grants to Colonial the right to cut and remove during construction of said pipe line all timber located on land of the Steel Corporation not more than twenty-five (25) feet in a northwesterly direction nor more than fifty (50) feet in a southeasterly direction from the center line of said pipe line. After construction has been completed and the temporary working strips abandoned as hereinabove provided, Colonial shall thereafter have the right to cut such timber located on land of the Steel Corporation as may endanger the safety of or interfere with the proper operation and maintenance of said pipe line but shall pay the Steel Corporation for the reasonable timber market value of any trees cut which are more than fifteen (15) feet from and on the northwesterly side of the center line of said pipe line or more than thirty-five (35) feet from and on the southeasterly side of said center line, such area being the fifty (50) feet wide permanent right of way easement herein granted.

(5) The rights herein granted shall not be superior to but shall be subject to: (a) right of way for a railroad owned by Southern Railway Company; (b) right of way for railroad owned by Louisville and Nashville Railroad Company; (c) right of way for public road conveyed by Tennessee Coal, Iron and Railroad Company to Shelby County, Alabama, by deed dated February 29, 1924; (d) such other easements as may exist over, upon, or across said land for roads, railroads, electric power transmission lines, telephone lines, telegraph lines, or pipe lines.

(6) After said pipe line has been constructed, Colonial shall furnish the Steel Corporation with a survey thereof as constructed, satisfactory to the Steel Corporation, locating said pipe line with reference to United States Government Subdivisions and Steel Corporation property lines. The Steel Corporation shall thereafter prepare a map showing the precise location of said pipe line as constructed, which map shall be substituted for the map attached to this contract.

(7) The Steel Corporation shall not be liable to Colonial for any claim for damage which may accrue on account of the exercise by Colonial of any of the rights herein granted; and Colonial shall indemnify, protect, and hold the Steel Corporation harmless from all loss, claim, damage, or expense on account of damage to or destruction of property (including, but not limited to, damage to coal mined), or injury to or death of persons, resulting from or arising out of the exercise by Colonial of any of the rights herein granted.

(8) The Steel Corporation reserves to itself all coal, iron ore, oil, gas, and other minerals contained in said land, together with the right to mine and remove the same and Colonial hereby releases the Steel Corporation from all liability to Colonial, its successors or assigns, on account of damage to said pipe line accruing from past or future removal of coal, iron ore, oil, gas, or other minerals contained in said land or from failure to leave adequate support for the surface of said land. While the foregoing reservation of minerals and mining rights and release from damages are intended to leave the Steel Corporation in a position to mine and remove the coal and other minerals in its lands in which said pipe line will be located, the desirability of attempting to protect the pipe line from actual damage resulting from such mining and removal has been considered prior to the making of this contract and, in order to attempt to provide such protection, but without in any way limiting said release from damages, the Steel Corporation hereby agrees to give Colonial reasonable notice of any planned mining operations which in the judgment of the Steel Corporation could result in damage to Colonial's pipe line, and Colonial shall promptly advise the Steel Corporation whether or not it wishes the Steel Corporation to leave in the ground such coal or other mineral as may be needed to attempt to protect the pipe line from damage, and if so, Colonial shall pay the Steel Corporation an amount equal to the value of such coal or other mineral as determined by the Steel Corporation promptly upon receipt of an invoice therefor. Nothing herein contained, however, shall be construed to abridge the Steel Corporation's right to install facilities across said pipe line as provided in paragraph (9) below.

(9) The Steel Corporation shall have the right at any and all times to use in its mining, quarrying, or manufacturing operations the land over which

said pipe line is located and the Steel Corporation shall also have the right to install, maintain, and use trucks, roads, pipe lines, haulage systems and wires or cables of any description across said pipe line, either above or below ground; and the Steel Corporation shall have the right to grant such rights to others, upon condition however, that: (a) no buildings or other structures or facilities of a permanent character which would unreasonably interfere with the construction, use or maintenance of said pipe line shall be constructed or maintained within fifteen (15) feet of the center line of said pipe line on the northeasterly side thereof or within thirty-five (35) feet on the center line of said pipe line on the southeasterly side thereof; (b) that the exercise of any of said rights by the Steel Corporation shall cause no unreasonable interference with said pipe line, and the rights granted to others shall not be superior to the rights herein granted to Colonial; and (c) that the character of installation of the above-mentioned crossings shall be in accordance with the reasonable requirements of Colonial.

(10)   Colonial shall at its expense upon completion of installation of its pipe line and thereafter in the maintenance, operation, and removal thereof cause the destruction or removal from land of the Steel Corporation of all debris, including timber refuse, resulting from such construction, operation, maintenance, or removal; and the surface of the land occupied by said pipe line shall at all times be maintained by Colonial in a condition satisfactory to the Steel Corporation; or, in default thereof, the Steel Corporation may itself remove or destroy said debris and restore the surface of said land, but at the expense of Colonial.

(11)   In the event Colonial violates any of the covenants herein contained and fails for sixty (60) days after notice in writing served upon it by the Steel Corporation to comply with such covenant or covenants, the Steel Corporation shall have the right to terminate this contract by giving Colonial notice in writing of its intention so to do whereupon, at the expiration of six (6) months after receipt by Colonial of such notice, this contract shall be deemed terminated and at an end.

(12)   The rights herein granted shall revert to the Steel Corporation, its successors or assigns, in the event of abandonment of the use of said pipe line during a continuous period of time of twelve (12) months.

(13)　In event of termination of this contract for any reason, Colonial shall, at its expense and within six (6) months after receipt of written request from the Steel Corporation remove its pipe line from said land and restore the surface of said land to a condition satisfactory to the Steel Corporation, failing which, the Steel Corporation may itself remove said pipe line and restore the surface of said land, but at the expense of Colonial.

(14)　This contract shall inure to and be binding upon the respective successors and assigns of the parties hereto as well as the parties themselves.

IN WITNESS WHEREOF, each of the parties hereto has caused this instrument to be executed in duplicate in its name and behalf and its corporate seal to be hereunto affixed and attested by its officers thereunto duly authorized, the day and year first above written.

UNITED STATES STEEL CORPORATION

By　/s/ A. V. Nishel
President
Limestone Coal & Iron Division

(SEAL)

ATTEST:

/s/ A. H. Knight
Assistant Secretary
United States Steel Corporation

COLONIAL PIPELINE COMPANY

By　/s/ Ben D. Leuty　/s/ HM
BEN D. LEUTY Vice President

(SEAL)

ATTEST:

/s/ L. P. Humann
L.P.HUMANN　Assistant Secretary

STATE OF ALABAMA

COUNTY OF JEFFERSON:

I, _____ H. D. Cannon _____, a Notary Public in and for said
County in said State, hereby certify that A. V. Wichel, whose name as President of
Tennessee Coal & Iron Division of United States Steel Corporation, a corporation,
is signed to the foregoing instrument, and who is known to me, acknowledged before
me on this day that, being informed of the contents of the instrument, he, as such
officer and with full authority, executed the same voluntarily for and as the act
of said corporation.

GIVEN UNDER MY HAND AND OFFICIAL SEAL this, the _2nd_____ day of
_____ August _____, 1962.

/s/  H. D. Cannon
                                        Notary Public ———————————————(SEAL)
                                        H. D. CANNON
                                        Notary Public, State at Large Alabama
                                        My commission expires October 18, 1964


STATE OF _GEORGIA_____

COUNTY OF _FULTON_____

I, _____Charles E. Graham_____, a Notary Public in and for said
County in said State, hereby certify that _____Ben D. Leuty_____, whose
name as _Vice___ President of Colonial Pipeline Company, a corporation, is signed to
the foregoing instrument, and who is known to me, acknowledged before me on this
day that, being informed of the contents of the instrument, he, as such officer
and with full authority, executed the same voluntarily for and as the act of said
corporation.

GIVEN UNDER MY HAND AND OFFICIAL SEAL this, the _20th_____ day of
_____July_____, 1962.

(SEAL)

_____/s/  Charles E. Graham_____
                                        Notary Public
                                        Notary Public, Georgia State at Large
                                        My Commission Expires Dec. 31, 1963



Land Department,
Tennessee Coal & Iron Division,
United States Steel Corporation.
Scale: 1 in. = 4000 ft.    June, 1962.

Townships 20 & 21 South, Ranges 3 & 4 West.

# EXHIBIT "B"



Townships 20 & 21 South, Ranges 3 & 4 West.

# EXHIBIT "C"



# Twin Pines Coal

January 13, 2009

Mr. Garry L. Sides
U. S. Steel Corporation
P.O. Box 599
Fairfield, AL 35064-0599

**Re:** **Successor in Interest to Contract with Colonial Pipeline Company**

Dear Garry:

This letter will confirm that Twin Pines Coal Company, Inc. is the successor in interest to that Contract entered into between United States Steel Corporation ("USS")and Colonial Pipeline Company on or about July 20, 1962.

Pursuant to certain coal mining lease entered into between USS and RGGS on the one hand and Twin Pines Coal Company, Inc. on the other, on or about November 28, 2007, it is the intent of USS and RGGS that Twin Pines Coal Company, Inc. succeed to and is the successor in interest to all USS's and RGGS's right, title, and interest in and to that contract entered into between USS and Colonial Pipeline Company in 1962, and may enforce it on its behalf.

If this is the understanding and agreement of USS and RGGS, please confirm by acknowledging such understanding.

Should you have any questions concerning this matter, please do not hesitate to contact me.

Sincerely,

**TWIN PINES COAL COMPANY, INC.**

George E. Barber
President

GEB/kkm

I acknowledge and confirm to you that Twin Pines has succeeded to all right, title, and interest in and to that certain agreement between USS and Colonial Pipeline Company dated July 20, 1962 and may enforce on behalf of USS and RGGS pursuant to the aforementioned leases between Twin Pines and RGGS and USS.

Garry L. Sides, Regional Manager
U.S. Steel Corporation

# EXHIBIT "D"

Twin Pines Coal Co, Inc.
74 Industrial Blvd
Jasper            State AL        ZIP 35501

# INVOICE

**Customer**

| | | | |
|---|---|---|---|
| Name | Colonial Pipeline Company | | |
| Address | 1185 Sanctuary Parkway Suite 100 | | |
| City | Alpharetta        State GA        ZIP 30009 | | |
| Phone | 678-762-2255 | | |

| | |
|---|---|
| Cust No. | COL-1 |
| Date | 4/27/2009 |
| Invoice No. | COL 042709 |
| FOB | Origin |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| 1 | 853,206 Coal Tons (Helena, Upper and Lower Thompson Seam) within 2" per second set back within increments 4 & 5 Segco Mine #1 | 37,624,657.00 | $37,624,657.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Payment Details**
Terms: Upon Receipt

| | |
|---|---|
| SubTotal | $37,624,657.00 |
| Shipping & Handling | |
| Taxes | |
| TOTAL | $37,624,657.00 |