IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TWIN PINES COAL COMPANY, INC., and RGGS LAND & MINERALS, LTD, L.P., a Delaware Limited Partnership, <br><br> PLAINTIFFS, <br><br> VS. <br><br> COLONIAL PIPELINE COMPANY, <br><br> DEFENDANT. | ) ) ) ) ) ) ) ) ) ) ) ) )   Case No.: 2:09-cv-01403-SLB |

**EXHIBIT "A"**

THIS CONTRACT, entered into this 20th day of July, 1962, by and between the UNITED STATES STEEL CORPORATION, a New Jersey corporation, hereinafter referred to as the "Steel Corporation" and COLONIAL PIPELINE COMPANY, a Delaware corporation, hereinafter referred to as "Colonial";

WITNESSETH:

(1) In consideration of the sum of Eleven Thousand Seven Hundred and 00/100 Dollars ($11,700.00) paid to the Steel Corporation by Colonial, receipt whereof is acknowledged, and in further consideration of the covenants of Colonial as hereinafter expressed to be kept and performed, the Steel Corporation, to the extent of its ownership, hereby grants to Colonial the right to construct, operate, maintain, and remove a pipe line not in excess of thirty-six (36) inches in diameter, for the transportation of petroleum products, upon a right of way easement herein granted, same being fifteen (15) feet in width on the northwesterly side of said pipe line and thirty-five (35) feet in width on the southeasterly side of said pipe line as measured from the center line of said pipe line as installed, upon and across land of the Steel Corporation in Section 31, Township 20 South, Range 3 West, Section 6, Township 21 South, Range 3 West, and Sections 1, 2, 9, 10, 11 and 17, Township 21 South, Range 4 West, Shelby County, Alabama, the approximate location of said pipe line being shown by red line on map attached hereto and made a part hereof. Said location is in accordance with plans heretofore submitted by Colonial to the Steel Corporation and no substantial deviation therefrom shall be made without the prior written consent of the Steel Corporation.

(2) For said considerations, the Steel Corporation, to the extent of its ownership further grants to Colonial the right to use during construction of said pipe line: (a) a strip of land ten (10) feet wide on the northwesterly side of said pipe line, the southeasterly boundary of said strip of land being parallel to and fifteen (15) feet northwesterly of the center line of said pipe line; and (b) a strip of land fifteen (15) feet wide on the southeasterly side of said pipe line, the northwesterly boundary of said strip of land being parallel to and thirty-five (35) feet from said center line. The right to use said strips of land shall terminate six (6) months after completion of construction of said pipe line and Colonial shall, after the completion of construction, restore the surface of said strips to the extent of the damage done thereto in the course of construction of said pipe line.

(3) For said considerations, the Steel Corporation further grants to Colonial such rights of ingress and egress over land of the Steel Corporation over which said pipe line is located as may be reasonably necessary for the exercise by Colonial of the rights herein granted. The Steel Corporation, however, reserves the right from time to time to designate the route or routes for such ingress and egress, provided that any route so designated shall provide reasonably convenient access to said pipe line.

(4) For said considerations, the Steel Corporation further grants to Colonial the right to cut and remove during construction of said pipe line all timber located on land of the Steel Corporation not more than twenty-five (25) feet in a northwesterly direction nor more than fifty (50) feet in a southeasterly direction from the center line of said pipe line. After construction has been completed and the temporary working strips abandoned as hereinabove provided, Colonial shall thereafter have the right to cut such timber located on land of the Steel Corporation as may endanger the safety of or interfere with the proper operation and maintenance of said pipe line but shall pay the Steel Corporation for the reasonable timber market value of any trees cut which are more than fifteen (15) feet from and on the northwesterly side of the center line of said pipe line or more than thirty-five (35) feet from and on the southeasterly side of said center line, such area being the fifty (50) feet wide permanent right of way easement herein granted.

(5) The rights herein granted shall not be superior to but shall be subject to: (a) right of way for a railroad owned by Southern Railway Company; (b) right of way for railroad owned by Louisville and Nashville Railroad Company; (c) right of way for public road conveyed by Tennessee Coal, Iron and Railroad Company to Shelby County, Alabama, by deed dated February 29, 1924; (d) such other easements as may exist over, upon, or across said land for roads, railroads, electric power transmission lines, telephone lines, telegraph lines, or pipe lines.

(6) After said pipe line has been constructed, Colonial shall furnish the Steel Corporation with a survey thereof as constructed, satisfactory to the Steel Corporation, locating said pipe line with reference to United States Government Subdivisions and Steel Corporation property lines. The Steel Corporation shall thereafter prepare a map showing the precise location of said pipe line as constructed, which map shall be substituted for the map attached to this contract.

(7) The Steel Corporation shall not be liable to Colonial for any claims for damage which may accrue on account of the exercise by Colonial of any of the rights herein granted; and Colonial shall indemnify, protect, and hold the Steel Corporation harmless from all loss, claim, damage, or expense on account of damage to or destruction of property (including, but not limited to, damage to coal mines), or injury to or death of persons, resulting from or arising out of the exercise by Colonial of any of the rights herein granted.

(8) The Steel Corporation reserves to itself all coal, iron ore, oil, gas, and other minerals contained in said land, together with the right to mine and remove the same and Colonial hereby releases the Steel Corporation from all liability to Colonial, its successors or assigns, on account of damage to said pipe line accruing from past or future removal of coal, iron ore, oil, gas, or other minerals contained in said land or from failure to leave adequate support for the surface of said land. While the foregoing reservation of minerals and mining rights and release from damages are intended to leave the Steel Corporation in a position to mine and remove the coal and other minerals in its lands in which said pipe line will be located, the desirability of attempting to protect the pipe line from actual damage resulting from such mining and removal has been considered prior to the making of this contract and, in order to attempt to provide such protection, but without in any way limiting said release from damages, the Steel Corporation hereby agrees to give Colonial reasonable notice of any planned mining operations which in the judgment of the Steel Corporation could result in damage to Colonial's pipe line, and Colonial shall promptly advise the Steel Corporation whether or not it wishes the Steel Corporation to leave in the ground such coal or other mineral as may be needed to attempt to protect the pipe line from damage, and if so, Colonial shall pay the Steel Corporation an amount equal to the value of such coal or other mineral as determined by the Steel Corporation promptly upon receipt of an invoice therefor. Nothing herein contained, however, shall be construed to abridge the Steel Corporation's right to install facilities across said pipe line as provided in paragraph (9) below.

(9) The Steel Corporation shall have the right at any and all times to use in its mining, quarrying, or manufacturing operations the land over which

said pipe line is located and the Steel Corporation shall also have the right to install, maintain, and use tracks, roads, pipe lines, haulage systems and wires or cables of any description across said pipe line, either above or below ground; and the Steel Corporation shall have the right to grant such rights to others, upon condition however, that: (a) no buildings or other structures or facilities of a permanent character which would unreasonably interfere with the construction, use or maintenance of said pipe line shall be constructed or maintained within fifteen (15) feet of the center line of said pipe line on the northwesterly side thereof or within thirty-five (35) feet of the center line of said pipe line on the southeasterly side thereof; (b) that the exercise of any of said rights by the Steel Corporation shall cause no unreasonable interference with said pipe line, and the rights granted to others shall not be superior to the rights herein granted to Colonial; and (c) that the character of installation of the above-mentioned crossings shall be in accordance with the reasonable requirements of Colonial.

(10) Colonial shall at its expense upon completion of installation of its pipe line and thereafter in the maintenance, operation, and removal thereof cause the destruction or removal from land of the Steel Corporation of all debris, including timber refuse, resulting from such construction, operation, maintenance, or removal; and the surface of the land occupied by said pipe line shall at all times be maintained by Colonial in a condition satisfactory to the Steel Corporation; or, in default thereof, the Steel Corporation may itself remove or destroy said debris and restore the surface of said land, but at the expense of Colonial.

(11) In the event Colonial violates any of the covenants herein contained and fails for sixty (60) days after notice in writing served upon it by the Steel Corporation to comply with such covenant or covenants, the Steel Corporation shall have the right to terminate this contract by giving Colonial notice in writing of its intention so to do whereupon, at the expiration of six (6) months after receipt by Colonial of such notice, this contract shall be deemed terminated and at an end.

(12) The rights herein granted shall revert to the Steel Corporation, its successors or assigns, in the event of abandonment of the use of said pipe line during a continuous period of time of twelve (12) months.

(13) In event of termination of this contract for any reason, Colonial shall, at its expense and within six (6) months after receipt of written request from the Steel Corporation remove its pipe line from said land and restore the surface of said land to a condition satisfactory to the Steel Corporation, failing which, the Steel Corporation may itself remove said pipe line and restore the surface of said land, but at the expense of Colonial.

(14) This contract shall inure to and be binding upon the respective successors and assigns of the parties hereto as well as the parties themselves.

IN WITNESS WHEREOF, each of the parties hereto has caused this instrument to be executed in duplicate in its name and behalf and its corporate seal to be hereunto affixed and attested by its officers thereunto duly authorized, the day and year first above written.

UNITED STATES STEEL CORPORATION

By /s/ A. V. Wiebel
President
Tennessee Coal & Iron Division

(SEAL)

ATTEST:

/s/ A. H. Knight
Assistant Secretary
United States Steel Corporation

COLONIAL PIPELINE COMPANY

By /s/ Ben D. Leuty   /s/ HM
BEN D. LEUTY Vice President

(SEAL)

ATTEST:

/s/ L. P. Humann
Secretary
L.P. HUMANN   Assistant

STATE OF ALABAMA

COUNTY OF JEFFERSON

I, _____H. D. Cannon_____, a Notary Public in and for said County in said State, hereby certify that A. V. Wiebel, whose name as President of Tennessee Coal & Iron Division of United States Steel Corporation, a corporation, is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

GIVEN UNDER MY HAND AND OFFICIAL SEAL this, the __2nd__ day of ____August____, 1962.

/s/ H. D. Cannon _____ (SEAL)
Notary Public

H. D. CANNON
Notary Public, State at Large Alabama
My commission expires October 18, 1964


STATE OF GEORGIA

COUNTY OF FULTON

I, _____Charles E. Graham_____, a Notary Public in and for said County in said State, hereby certify that _____Ben D. Leuty_____, whose name as __Vice__ President of Colonial Pipeline Company, a corporation, is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

GIVEN UNDER MY HAND AND OFFICIAL SEAL this, the __20th__ day of ____July____, 1962.

(SEAL)

/s/ Charles E. Graham
Notary Public

Notary Public, Georgia State at Large
My Commission Expires Dec. 31, 1963



Land Department,
Tennessee Coal & Iron Division,
United States Steel Corporation.
Scale: 1 in. = 4000 ft.    June, 1962.

Townships 20 & 21 South, Ranges 3 & 4 West.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TWIN PINES COAL COMPANY, INC., )
and RGGS LAND & MINERALS, LTD, )
L.P., a Delaware Limited Partnership, )
)
PLAINTIFFS, )
)
VS. ) Case No.: 2:09-cv-01403-SLB
)
COLONIAL PIPELINE COMPANY, )
)
DEFENDANT. )

**EXHIBIT "B"**

Land Department,
Tennessee Coal & Iron Division,
United States Steel Corporation.
Scale: 1 in. = 4000 ft.      June, 1962.



Townships 20 & 21 South, Ranges 3 & 4 West.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TWIN PINES COAL COMPANY, INC., and RGGS LAND & MINERALS, LTD, L.P., a Delaware Limited Partnership, | ) ) ) ) | |
| PLAINTIFFS, | ) ) | |
| VS. | ) ) | Case No.: 2:09-cv-01403-SLB |
| COLONIAL PIPELINE COMPANY, | ) ) ) | |
| DEFENDANT. | ) | |

**EXHIBIT "C"**

JACKSON, FIKES, HOOD & BRAKEFIELD
BANKHEAD BYARS BUILDING
1816 3RD AVE
SUITE 200
P.O. BOX 748

JASPER, ALABAMA 35502-0748
TELEPHONE (205) 387-2171
FACSIMILE (205) 387-2174
TAX ID #63-0583984

HARVEY JACKSON, JR
EDWARD R. JACKSON
RICHARD E. FIKES

J. DAVID HOOD
JAMES C. BRAKEFIELD
JUDSON B. ALLEN

January 6, 2010

Mr. Robert S. Canavera, Manager - Timber Properties
UNITED STATES STEEL
P.O. Box 599
Fairfield, AL 35064-0599

  RE: Twin Pines Coal Company, Inc. / Colonial Pipeline Company

Dear Mr. Canavera:

  Thank you for meeting with me on Wednesday, December 30, 2009 and January 5, 2010. I would like to recap where I think we are and if you are in agreement with the terms and conditions contained in this letter, please sign below for approval and acceptance. This letter will replace my previous letters of December 31, 2009 and today, and is referred to herein as the ("Agreement").

  At the request of Twin Pines Coal Company, Inc. ("Twin Pines") on January 13, 2009, Gary L. Sides, Regional Manager for U.S. Steel Corporation confirmed and acknowledged that Twin Pines succeeded to all U.S. Steel Corporation's ("U.S. Steel") right, title and interest in and to that certain ("contract") for a pipeline easement between U.S. Steel and Colonial Pipeline Company ("Colonial") of July 20, 1962 and any amendments thereto (the "Easement Agreement") and that Twin Pines could enforce on behalf of U.S. Steel the Easement Agreement. U.S. Steel understands that in reliance on that letter Twin Pines brought an action along with RGGS Land & Minerals, Ltd. LP ("RGGS") to recover the value of the coal sterilized by the pipeline, as provided for in the Easement Agreement.

  Twin Pines agreed that U.S. Steel could rescind the January 13, 2009 letter on condition that a new letter agreement be reached. It was, and is, the intention of U.S. Steel and Twin Pines that Twin Pines has, and will have, whatever rights U.S. Steel has under Section 8 of the Easement Agreement between U.S. Steel and Colonial that are appropriate to, and consistent with, Twin Pines' rights to recover coal in the Dry Creek area under its coal mining lease with U.S. Steel and affected by Colonial's pipeline. These rights specifically include whatever rights U.S. Steel has to recover the value of the coal sterilized by the pipeline pursuant to the Easement Agreement.

To that end, and in consideration of the mutual covenants and promises contained in that certain coal ming lease agreement between Twin Pines and U.S. Steel dated August 20, 2007, and any amendments thereto, and the further prosecution of the lawsuit referred to hereinabove, U.S. Steel confirms, acknowledges and quitclaims to Twin Pines whatever rights U.S. Steel has under Section 8 of the Easement Agreement and that Twin Pines seeks to enforce by way of that certain lawsuit filed in the United States District Court for the Northern District of Alabama, Southern Division, styled, Twin Pines Coal Company, Inc., and RGGS Land & Minerals, Ltd, L.P., a Delaware Limited Partnership vs. Colonial Pipeline Company, Case No.: 2:09-cv-01403-SLB as amended and restated ("the Lawsuit").

A copy of the Lawsuit as amended and restated is attached hereto and incorporated herein by reference as if fully set out. The rights conveyed by this letter specifically include whatever rights U.S. Steel has under Section 8 of the Easement Agreement that are necessary to pursue the claims made in the above styled lawsuit, including the recovery of the value of the coal sterilized by Colonial's pipeline, and Twin Pines' rights to avail itself of the various defenses and indemnities provided U.S. Steel, and any amendments thereto, in Section 8 of the Easement Agreement between U.S. Steel and Colonial as well as any other rights necessary and proper to the recovery of coal from the leased premises under that certain lease dated August 20, 2007, referenced above and as contained in Section 8 of the Easement Agreement.

Notwithstanding anything to the contrary contained above, U.S. Steel does not relinquish any rights it has regarding the crossing of the pipeline in the Dry Creek Reserve and is not conveying by this Agreement any rights to relocate the pipeline or increase or decrease the grant of the easement to Colonial by U.S. Steel. It is the intent of this Agreement that Twin Pines succeed only to the rights of U.S. Steel in Section 8 of the Easement Agreement, that are consistent with and necessary for the mining and recovery of coal in the Dry Creek Reserve covered by Twin Pines' coal mining lease with U.S. Steel, and as contemplated by the Easement Agreement, and the rights necessary to a prosecution of the Lawsuit that U.S. Steel has.

As afore stated those rights specifically include the right of Twin Pines to avail itself of the various defenses and indemnities provided U.S. Steel in the Agreement and any amendments thereto. U.S. Steel specifically reserves all right, title and interest in and to all other rights, obligations, terms and conditions under the Easement Agreement, not in conflict with the grant contained in this Agreement and its right to receive royalty payments under the coal mining lease dated August 20, 2007, as amended for any sterilized coal. U. S. Steel

realizes that this Agreement will be pled as an exhibit to the amended and restated complaint in the above Lawsuit and agrees to be bound by any judgment in connection therewith to the extent that such judgment does not affect the surface estate of U.S. Steel's lands.

The parties further agree that this Agreement shall terminate only upon written notice of termination from Twin Pines to U.S. Steel that it no longer wishes to pursue its claims against Colonial, or upon the termination of all litigation by way of dismissal, judgment or final appeal occasioned by the Lawsuit or the termination of that certain coal mining lease between U.S. Steel and Twin Pines and any amendments thereto dated August 20, 2007, whichever occurs last. Upon the termination of this Agreement, all rights conveyed hereunder shall automatically, without effort on behalf of U.S. Steel, revert to U.S. Steel, its successors and assigns, and this Agreement shall have no further force and effect.

Very truly yours,

TWIN PINES COAL COMPANY, INC.

By: Edward R. Jackson, Attorney in Fact for
Twin Pines Coal Company, Inc.

ERJ/aw
Attachment
cc: Michael Partain, Esq. / mmpartain@uss.com
UNITED STATES STEEL
P.O. Box 599
Fairfield, AL 35064-0599

Mr. T. G. Howard / thoward@uss.com
UNITED STATES STEEL
P.O. Box 599
Fairfield, AL 35064-0599

Jane Margaret Laid Calamusa, Esq. / jcalamusa@rosenhardwood.com
ROSEN HARWOOD
2217 Jack Warner Pkwy.
Tuscaloosa, AL 35401

Jeff Friedman, Esq. / jfriedman@friedmanleak.com
Lee Patterson / lpatterson@friedmanleak.com
FRIEDMAN LEAK
P.O. Box 43219
Birmingham, AL   35243-3219

I acknowledge and confirm to you that U.S. Steel agrees to the terms and conditions contained in this letter and that I have full authority to make such agreement for U.S. Steel.

ACCEPTED AND APPROVED:

_Robert S Canavera_  /  1/7/2010
Robert S. Canavera, Manager - Timber Properties        (date)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TWIN PINES COAL COMPANY, INC., )
and RGGS LAND & MINERALS, LTD, )
L.P., a Delaware Limited Partnership, )
                                      )
        PLAINTIFFS,                   )
                                      )
VS.                                   )    Case No.: 2:09-cv-01403-SLB
                                      )
COLONIAL PIPELINE COMPANY,            )
                                      )
        DEFENDANT.                    )

**EXHIBIT "D"**

Twin Pines Coal Co, Inc.
74 Industrial Blvd
Jasper          State AL          ZIP 35501

# INVOICE

**Customer**
Name: Colonial Pipeline Company
Address: 1185 Sanctuary Parkway Suite 100
City: Alpharetta    State GA    ZIP 30009
Phone: 678-782-2255

Cust No. COL-1
Date: 4/27/2009
Invoice No. COL 042709
FOB: Origin

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| 1 | 653.206 Coal Tons (Helena, Upper and Lower Thompson Seam) within 2" per second set back within increments 4 & 5 Segco Mine #1 | 37,624,657.00 | $37,624,657.00 |

**Payment Details**
Terms: Upon Receipt

SubTotal: $37,624,657.00
Shipping & Handling:
Taxes:
TOTAL: $37,624,657.00

C:\Documents and Settings\lewaldrop\Local Settings\Temporary Internet Files\Content.Outlook\O1ADCOJ7\Invoice Colonial Pipeline Co 042709.xls Apr 09

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TWIN PINES COAL COMPANY, INC., and RGGS LAND & MINERALS, LTD, L.P., a Delaware Limited Partnership, | ) ) ) ) | |
| PLAINTIFFS, | ) ) ) | |
| VS. | ) ) | Case No.: 2:09-cv-01403-SLB |
| COLONIAL PIPELINE COMPANY, | ) ) ) | |
| DEFENDANT. | ) | |

**EXHIBIT "E"**

**Twin Pines Coal Co, Inc.**
74 Industrial Blvd
Jasper          State AL          ZIP 35501

# INVOICE

| Customer | | | |
|---|---|---|---|
| Name | Colonial Pipeline Company | | |
| Address | 1185 Sanctuary Parkway Suite 100 | | |
| City | Alpharetta    State GA    ZIP 30009 | | |
| Phone | 678-762-2255 | | |

| | |
|---|---|
| Cust No. | COL-1 |
| Date | 10/30/2009 |
| Invoice No. | COL 103009 |
| FOB | Origin |

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| 1 | 2,805.041 Coal Tons (Gholson, Clark, Coke, Atkins, Alice, Jones, and Big Bone) within 2" per second set back within the remaining Dry Creek reserve of Colonial Pipeline Segco Mine #1 | 123,696,734.00 | $123,696,734.00 |

**Payment Details**
○  Terms: Upon Receipt
○
○

| | |
|---|---|
| SubTotal | $123,696,734.00 |
| Shipping & Handling | |
| Taxes | |
| **TOTAL** | **$123,696,734.00** |

Office Use Only