UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TWIN PINES COAL COMPANY, INC.; RGGS LAND & MINERALS, LTD, L.P., } } } } | |
| Plaintiffs, } | |
| v. } } | CASE NO. 2:09-cv-1403-SLB |
| COLONIAL PIPELINE COMPANY, } } | |
| Defendant. } | |

## MEMORANDUM OPINION

This case is before the court on plaintiffs' Motion to Amend Complaint. (Doc. 27.)[1] Plaintiffs, Twin Pines Coal Company, Inc. ("Twin Pines"), and RGGS Land & Minerals, Ltd, L.P. ("RGGS"), (collectively "Plaintiffs,") seek to add an additional count for breach of contract. The Motion is opposed by defendant Colonial Pipeline Company ("Colonial"). (Doc. 30.) Also before the court is Colonial Pipelines Company's Motion to Strike Declaration of Steven R. Ingle. (Doc. 42.) For the reasons stated below, the court is of the opinion that plaintiffs' Motion to Amend, (doc. 27), is due to be denied. Colonial's Motion to Strike, (doc. 42), will be granted in part and denied in part.

**CASE OVERVIEW**

Plaintiff Twin Pines is in the business of mining coal in an area of property located in Shelby County, Alabama known as the Dry Creek Reserve. (Doc. 1 at ¶ 7, Complaint.)

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

Plaintiff RGGS owns the coal and other mineral rights on the Dry Creek Reserve. (*Id.*) In August and November of 2007, Twin Pines entered into mineral and surface leases with United States Steel Corporation ("USSC") and plaintiff RGGS, which gave Twin Pines the right to remove coal contained in the leased property, the Dry Creek Reserve and obligated Twin Pines to pay royalties to RGGS. (*Id.* at ¶ 8.)

Defendant Colonial transports petroleum products through its pipeline, which traverses the Dry Creek Reserve. (*Id.* at ¶ 9.) Colonial's right to own, operate, and maintain the pipeline through the Dry Creek Reserve derives from a 1962 Agreement with USSC, ("the Agreement"). (*Id.* at ¶ 10 & Ex. A.) Under the Agreement, Colonial is subject to reservations and retained rights of USSC and its successors and assigns, which include Twin Pines and RGGS. (*Id.*) The parties do not dispute that Twin Pines has succeeded to the right to enforce the Agreement.

Paragraph 8 of the Agreement's operative language, at issue in this case, states:

The Steel Corporation reserves to itself all coal, iron ore, gas and other minerals contained in said land together with the right to mine and remove the same and Colonial hereby releases the Steel Corporation from all liability to Colonial, it successors or assigns, on account of damage to said pipeline accruing from past or future removal of coal, iron ore, gas or other minerals contained in said land or from failure to leave adequate support for the surface of said land. While the foregoing reservation of minerals and mining rights and releases from damage are intended to leave the Steel Corporation in a position to mine and remove the coal and other minerals in its lands in which said pipeline will be located, the desirability of attempting to protect the pipeline from actual damage resulting from such mining and removal has been considered prior to the making of this contract and, in order to attempt to provide such protection, but without in any way limiting said release from damages, the Steel Corporation hereby agrees to give Colonial reasonable

2

>  notice of any planned mining operations which in the judgment of the Steel Corporation could result in damage to Colonial's pipeline, and Colonial shall promptly advise the Steel Corporation whether or not it wishes the Steel Corporation to leave in the ground such coal or other mineral as may be needed to attempt to protect the pipeline from damage, and if so, Colonial shall pay the Steel Corporation an amount equal to the value of such coal or other mineral as determined by the Steel Corporation promptly upon receipt of an invoice therefore. . . .

(*Id.* at ¶ 12; Doc. 33, pp. 14-15.)

Plaintiffs allege in Count One of their Complaint that beginning in March 2008, Twin Pines gave reasonable notice to Colonial that it intended to conduct mining operations in the Dry Creek Reserve. (Doc. 1 at ¶¶ 14-19, 23-25.) In June 2008, representatives of Twin Pines met with its blasting contractor and Colonial to discuss the proposed mining. (*Id.* at ¶ 14.) In July 2008, Twin Pines provided Colonial with written notice of its intent to mine, and requested that Colonial provide any setbacks as allowed under the Agreement. (*Id.* at ¶ 16.) Eight months later, Colonial provided setbacks for a portion of the Dry Creek Reserve. (*Id.* at ¶¶ 17-18.) Twin Pines then delivered an invoice, ("the first invoice"), in the amount of $37,624,657.00, to Colonial for payment of the value of the coal in the area affected by the partial setbacks ("Phase I").[2] (*Id.* at ¶ 19.) To date, Colonial has failed to pay the invoiced amount, thus giving rise to this breach of

---

[2]In its brief in Opposition to Plaintiffs' Motion to Amend, Colonial represents that the permit, issued on February 7, 2008, authorized mining related to the first invoice. (Doc. 30, p. 16.) Plaintiffs commenced mining operations shortly thereafter. Thus, 14 months passed, during which time Twin Pines engaged in mining operations, before plaintiffs submitted the first invoice.

contract action.³  (*Id.* at ¶ 21.)

As permitted by the court's Scheduling Order, (doc. 24), plaintiffs timely filed their Motion to Amend Complaint, (doc. 27), and attached a proposed Amended and Restated Complaint.  The proposed amendment would add another breach of contract count, and states that Twin Pines has presented Colonial with a second invoice in the amount of $123,696,734.00 for the value of recoverable coal in the Dry Creek Reserve, affected by the pipeline, but not included in the first invoice ("Phase II").  (Doc. 27, p. 14 at ¶ 32.)  Plaintiffs allege that Colonial is in breach of contract for its failure to establish setback limits when requested, and to promptly pay the second invoice upon presentation.  (*Id.* at ¶ 33.)  Colonial filed its Opposition to Plaintiffs' Motion to Amend Complaint, (doc. 30), alleging that the amendment is futile.  Colonial contends that the court lacks subject matter jurisdiction to hear plaintiffs' proposed additional breach of contract claim, because the threshold requirements of ripeness and standing have not been satisfied.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 15(a)(2), a party must seek leave of the court, or obtain written consent of the adverse party, in order to amend a pleading after an

---

³Count One of plaintiffs' Complaint asserts a breach of contract claim for failure to pay the first invoice.  Count Two, a breach of contract claim for mobilization and demobilization costs, alleges that Colonial's failure to promptly provide setbacks caused Twin Pines to incur additional costs related to its ceasing mining operations near the pipeline and relocating to another area within the Dry Creek Reserve.  (Doc. 1, ¶¶ 26-29.)
    The Complaint also alleges that, because Colonial has refused to pay for the coal invoiced for Phase I, Twin Pines has ceased paying royalties due RGGS.  (Doc. 1 at ¶ 25.)

adverse party, as here, has submitted a responsive pleading. Although Rule 15 states that "leave shall be freely given when justice so requires," it is well settled that the court may deny a motion for leave to amend when the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hall v. United States Ins. Co. Of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004).

"Leave to amend is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (affirming district court's denial of motion to amend on grounds that defendant would have been entitled to summary judgment on the claim against him if the amendment had been allowed); *see also Matthews v. Brookstone Stores, Inc.*, No. Civ. A. 05-0369-WS-C, 2005 WL 3058158, at *2 (S.D Ala. Nov. 15, 2005) (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) ("The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied."). "When a district court denies plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail." *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 822-823 (11th Cir. 1999).

**DISCUSSION**

Defendant Colonial contends that plaintiffs' proposed second claim for breach of

contract would be subject to dismissal, and thus, is futile, because the court lacks subject matter jurisdiction to hear the claim. (Doc. 30, pp. 6-7.) Colonial asserts that the "threshold jurisdictional requirements of ripeness and standing have not been met." (*Id.*) While ripeness deals with timing of the suit and standing deals with which party can appropriately bring suit, the Eleventh Circuit recognized in *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006) that ripeness and standing may converge in cases that deal with possible future injury. Colonial takes the position that here, as in *Elend*, "whether this case is examined through the prism of standing or ripeness, it can be distilled to a single question: whether plaintiffs have sufficiently alleged an imminent and concrete threat of future injury by stating their intention[,]" to mine Phase II of the Reserve. (Doc. 30, p. 12 [quoting *Elend*, 471 F.3d at 1205 (holding that plaintiffs, seeking declaratory and injunctive relief for protection of First Amendment rights during future protest activity, failed to satisfy standing and ripeness requirements because the complaint contained no factual specifics as to time, place, audience, or nature of the proposed communications)].)

In sum, Colonial argues that in order to assert standing and ripeness for its proposed breach of contract claim, Twin Pines must first demonstrate that it has met its requirement, under the Agreement, to give Colonial "reasonable notice of planned mining operations." Colonial concludes that what is contemplated by the word "planned" is more than a mere "stated intention" and, instead, requires, at a minimum, that plaintiffs

"complete the prerequisite, regulatory steps." (Doc. 30, p. 8.) Given that interpretation, Colonial next asserts that plaintiffs' failure to plan mining operations renders their proposed breach of contract claim no more than a statement of a future, speculative injury; thus, it is not a justiciable claim. The court agrees.

The "core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III" of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)). To assert standing, the plaintiff must establish three elements: 1) the plaintiff suffered an "injury in fact"– an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; 2) there must be a causal connection between the injury and the conduct complained of; and 3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* at 560-61 (internal citations and quotations omitted).

The cases and controversies requirement of Article III also limits the jurisdiction of the federal courts to issues which are ripe for review. *Elend*, 471 F.3d at 1211. Ripeness is essentially a "question of timing." *A & M Enterprises, LLC. v. Houston*, 179 F. Supp. 2d 1356, 1360-61 (M.D. Ala. 2001) (quoting *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 140 (1974)). "The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through review of potential or abstract

disputes." *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). "Courts must resolve whether there is sufficient injury . . . , and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking by the court." *Id.* (citation omitted).

The Eleventh Circuit has held that evaluating "[r]ipeness requires the weighing of two factors: (1) the hardship to the parties of withholding court consideration; and (2) the fitness of the issues for judicial review." *Kirby v. Siegelman*, 195 F.3d 1285,1290 (11th Cir. 1999) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). "Courts should be cautious when a case is anchored in future events that may not occur as anticipated, if at all; courts simply 'may not pass on hypothetical matters.'" *A&M Enters.*, 179 F. Supp. 2d at 1360-61 (quoting *Kirby*, 195 F.3d at1290). Addressing the "doctrinal overlap between standing and ripeness," the Eleventh Circuit stated in *Elend,* "If an action for prospective relief is not ripe because the factual predicate for the injury has not fully materialized, then it generally will not contain a concrete injury requisite for standing." *Elend*, 471 F.3d at 1205. In this case, the court is of the opinion that Twin Pines has not demonstrated a fully materialized factual predicate, whether actual or impending, upon which to base its proposed breach of contract claim.

Twin Pines asserts that Colonial breached the terms of the Agreement by its failure to provide setbacks[4] and its failure to tender payment for invoiced coal; and, therefore,

---

[4] On March, 1, 2010, four days after oral argument on plaintiffs' Motion to Amend Complaint, (doc. 27), Colonial provided Twin Pines with the setbacks related to Phase II. (Doc.

Twin Pines has suffered an injury-in-fact sufficient to confer jurisdiction on this court. (Doc. 33, pp. 15-16.) Twin Pines contends that, under the Agreement, "permitting of an area [is not required] as a condition precedent to Colonial's contractual obligation to pay for sterilized coal invoiced by Twin Pines." (Doc. 33, p. 11.) Plaintiffs add that Colonial's failure to provide setbacks for the entire Reserve, as opposed to a limited area, has delayed Twin Pines from conducting further mining operations in the Reserve. (*Id.*) Twin Pines contends that its actions, with respect to the Reserve, show more than mere intent to mine, and, in fact, illustrate the definition of "planned mining operations."(Doc. 33, p. 12.) As support, at oral argument of its Motion, Twin Pines outlined the following requisite steps to "open a mine": 1) identify a reserve; 2) prospect the property to determine quantity and quality of available coal; 3) identify a market; 4) evaluate environmental issues; 5) obtain lease agreements for the reserve; 6) pay minimum lease royalties; 7) obtain required permits, which include, water, EPA, NPDES, and Corps of Engineers; 8) plan mining operations, establishing "phases;" 9) obtain an Alabama Surface Mining Commission ("ASMC") permit for the first phase; and 10) staff and equip the site. (Doc. 37, pp. 6-11, Hearing Transcript.) Twin Pines asserts that obtaining the permit is all that is lacking before it can begin mining Phase II, and, but for Colonial's failure to provide the setbacks for Phase II, it would have begun the ASMC permitting process for that phase. (*Id.*, p. 12.) Thus, Twin Pines argues that it has performed under

38, p. 2; Doc. 41, p. 1. & Ex. C, pp. 6-7.)

the terms of the Agreement and that Colonial has breached the contract causing harm which is concrete, particularized and actual, causally related to the breach, and will be redressed by the payment of the Phase II invoice.

In response, Colonial stated, at oral argument on plaintiffs' Motion to Amend, that it could not establish the setbacks until Twin Pines provided a blasting plan, a required component of the permit application, which includes relevant data, such as the type of charges that will be used, the diameter of the bore holes, and where the mining will "actually impact the pipeline."[5] (*Id.*, p. 44.) Thus, the parties' respective arguments

---

[5] After Colonial provided setbacks for Phase II, plaintiffs filed a supplemental submission in support of their Motion to Amend. (Doc. 38.) As support, plaintiffs attached the Declaration of Steven R. Ingle, Twin Pines Vice President of Engineering. (*Id.*, Ex. B.) Colonial moved to strike the declaration on the grounds that "the affidavit contains inadmissible legal conclusions and relies upon documents not in evidence." (Doc. 42 at ¶ 1.) At issue is Ingle's statement that "[t]he blasting plan submitted to the [ASMC] in 2007 met all applicable regulations and was suitable to be applied to the entire Dry Creek Reserve." (*Id.* at ¶ 2; Doc. 38, Ex. B at ¶ 2.) Plaintiffs subsequently filed an amended affidavit, and provided the blasting plan. (Doc. 45, Ex. A.) Plaintiffs argue that the blasting plan, filed with ASMC in 2007, is relevant to show that Colonial had the information it claimed it was lacking. Plaintiffs also contend that Ingle's opinion falls within the permissible bounds of Rule 701 of the Federal Rules of Evidence. The court disagrees.

In its brief in opposition to Colonial's Motion to Strike, Twin Pines argues that "testimony of an *expert* familiar by training and experience . . . would clearly be helpful to the jury." (Doc. 45, p. 4 [quoting *Bauman v. Centex Corp.*, 611 F.2d 1115, 1121 (5th Cir. 1980) (emphasis added)].) Twin Pines further asserts that Ingle "is a person with extensive personal knowledge, *training and experience* in the permitting and mining process." (*Id.* [emphasis added])

Rule 701, which governs lay witness testimony, clearly permits witness testimony "[i]f the witness is not testifying as an expert," and excludes testimony that is "based on scientific, technical, or other specialized knowledge within the scope of Rule 702. *See* Fed. R. Evid. 701. Therefore, the court rejects Twin Pines' argument that the scope of Ingle's Affidavit testimony falls within the admissible testimony contemplated by Rule 701.

Accordingly, Colonial's Motion to Strike, (doc. 42), is due to be granted in part, as it pertains to the first sentence in paragraph two of the Declaration of Steven R. Ingle, attached to plaintiffs' Supplemental Submission in support of its Motion to Amend, (doc. 38, Ex. B at ¶ 2).

presented the proverbial "Catch 22" – without a permit, Colonial can't provide setbacks – without setbacks, Twin Pines can't complete the permitting process.

Although Colonial recently provided setbacks for Phase II,[6] such action does not alter the standing and ripeness analysis of plaintiffs' proposed breach of contract claim. (*See* Doc. 41, pp. 1-2, Supplemental Opposition.) The court notes that Colonial provided the setbacks "*based on the information known to Colonial at this time*," and with the reservation of the right to "change the setback distance if and when Twin Pines submits a blasting plan and permit application for [Phase II]." (Doc. 41, Ex. C, p. 7 [emphasis supplied by party].) The Phase II setbacks are identical to those identified by Colonial for Phase I. (*Id.*) Because Twin Pines utilized the Phase I figures in calculating the amount due and invoiced for Phase II, the recently provided information did not prompt an amendment of the invoice. (*See* Doc. 38, p.3.) More importantly, as Colonial points out, as of May 6, 2010, a full two months after Colonial provided the additional setbacks, "Twin Pines has yet to permit, yet to bond, and yet to mine" Phase II. (Doc. 41, p. 1 & Ex. A at ¶¶ 7-8.)

Under the Agreement, breach of contract on the part of Colonial occurs when it both fails to advise Twin Pines whether it wishes to impose setbacks, and, if so, fails to

---

With respect to the remainder of this Declaration, defendant's Motion to Strike, (doc. 42), will be denied.

[6] *See supra* note 4. The court notes that Colonial provided the setbacks despite its earlier argument that it could not do so until Twin Pines obtained a permit to mine Phase II.

pay for coal subsequently invoiced by Twin Pines.  It is axiomatic that neither action is required unless, and until, Twin Pines satisfies its duty to perform.  *See Campbell v. Naman's Catering, Inc.*, 842 So. 2d 654, 658 (Ala. 2002) (stating that breach of contract requires proof of a valid contract, the plaintiff's performance under the contract, the defendant's non-performance, and damages).

The court, therefore, examines whether plaintiffs' proposed amendment asserts a mature breach of contract claim.  Specifically at issue is whether Twin Pines has performed under the terms of the Agreement and thus obligated Colonial's performance.

The parties disagree as to the meaning of "planned mining operations."  Whether the contract term "planned mining operations" is ambiguous is a question of law for the trial court to determine.  *P & S Business, Inc. V. So. Central Bell Tel. Co.*, 466 So. 2d 928, 931 (Ala. 1985); *see also McLemore v. Hundai Mfg. Ala., LLC*, 7 So. 3d 318, 327-28 (Ala. 2008) ("[J]ust because the parties allege different constructions of an agreement, it does not necessarily mean that the agreement is ambiguous.") (citation omitted).  When interpreting a contract, or attempting to discern the purpose of a contract, the court must first look to the plain language of the contract and determine if it is ambiguous.  *Ex parte Cohen*, 988 So. 2d 508, 514 (Ala. 2008) (citing *Turner v. West Ridge Apartments, Inc.*, 893 So. 2d 332, 335 (Ala. 2004)).  In determining whether the language of a contract is ambiguous, courts construe the words according to "the interpretation ordinary men would place on the language used therein."  *Progressive Specialty Ins. Co. v. Naramore*, 950 So. 2d 1138, 1141 (Ala. 2006) (quotations and citations omitted).  Further, contracts

are "construed so as to give effect to the intention of the parties, and, to determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions." *Smith, Blocker & Lowther, P.C. v. Attorneys Insurance Mut. Of Ala., Inc.*, 703 So. 2d 866, 870 (Ala. 1997). "If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court . . . ." *McDonald v. U.S. Die Casting and Dev. Co.*, 585 So. 2d 853 (Ala. 1991).

The court is of the opinion that the word "planned," within the context of the Agreement, means more than mere intent. Paragraph eight of the Agreement initially describes USSC's (predecessor in interest to Twin Pines) reservation of mining rights and releases USSC from liability to Colonial for damage to its pipe due to mining. The stated purpose of the reservation and release reflects the parties' intent "to leave [USSC] in a **position** to mine." At its core, the Agreement acknowledges an existing general intent on the part of USSC to mine the area affected by Colonial's pipeline and a corresponding intent to protect the right of USSC to act on that general intention. The Agreement adds that, because it is desirable to attempt to "protect the pipeline from actual damage resulting from such mining[,]" if USSC plans mining that, in its judgment, could damage the pipeline, it is to give notice to Colonial, at which time Colonial shall determine whether or not to take protective measures, that is, the establishing of setbacks. This portion of the Agreement reflects a recognition by the parties of the potential for a change in USSC's position, that is, a shift from general intent to mine, to specific, detailed plans.

13

Importantly, the Agreement leaves to the judgment of USSC the determination of whether the planned mining could damage the pipeline; however, that phrase may not be read in isolation.  In the context of the entire Agreement, the court finds that the term "planned mining operations" clearly means more than a general intention and, instead, denotes specific plans that are implemented to the extent that there exists an imminent threat of actual damage to the pipeline.

      Given these considerations, Count II of plaintiffs' proposed amended complaint does not state a factual predicate which is sufficiently mature to meet the jurisdictional requirements of standing and ripeness.  Under the Agreement, Twin Pines incurs injury if, and when, it cannot mine the entire Reserve and receive the value of the bargained for mineral rights.  Twin Pines has not demonstrated that its legally protected interest has suffered either actual or imminent harm.  Twin Pines is still in a position to mine.  The court finds particularly compelling the fact that Twin Pines was able to begin mining Phase I prior to any provision of setbacks.  Thus, the court finds that plaintiffs' alleged injury, related to Phase II, is rooted in "future events that may not occur as anticipated, if at all," and thus is not ripe for review.  *A&M Enters.*, 179 F. Supp 2d at 1360-61.  Further, considering the factors relevant to standing, the court concludes that withholding judicial consideration of the proposed claim will not work a hardship to plaintiffs, given that nothing prohibits the plaintiffs' ability to bring that claim, if, and when, it is ripe for review.  *Kirby*, 195 F.3d at 1290.

**CONCLUSION**

Based on the foregoing, the court finds that plaintiffs have failed to show that Count II of their proposed amended complaint meets the jurisdictional requirements of ripeness and standing. Therefore, the proposed amendment is futile and plaintiffs' Motion to Amend Complaint is due to be denied. An Order denying plaintiffs' Motion to Amend, (doc. 27), and granting in part and denying in part defendant's Motion to Strike, (doc. 42), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 28th day of September, 2010.

*/s/ Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE