FILED

2013 Feb-19  PM 02:59
U.S. DISTRICT COURT
N.D. OF ALABAMA



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **TWIN PINES COAL COMPANY, INC., RGGS LAND & MINERALS, LTD., L.P.,** ) ) ) ) | |
| **Plaintiffs,** ) ) | |
| **v.** ) ) ) | **CASE NO. 2:09-cv-1403-SLB** |
| **TWIN PINES, LLC, TWIN PINES II, LLC,** ) ) ) | |
| **Intervenors,** ) ) | |
| **v.** ) ) ) | |
| **COLONIAL PIPELINE COMPANY,** ) ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION**

This case is currently before the court on Intervenors' Motion for Partial Summary Judgment.  (Doc. 248.)[1]  Intervenors in this case, Twin Pines, LLC and Twin Pines II, LLC (collectively referred to as "intervenors"), contest plaintiffs' counsel's, the law firms of Jackson, Fikes, Hood & Brakefield ("the Jackson firm") and Friedman, Dazzio, Zulanas & Bowling, P.C. ("the Friedman firm"),[2] Claim for Attorneys' Fees and Statutory Lien, (doc. 222), and Motion for Court Ordered Award of Attorneys' Fees, (doc. 226), which were filed

---

[1]  Reference to a document number, ("Doc. ___"), refers to the number assigned to each document as it is filed in the court's record.

[2]  When discussed together, the firms will be referred to as "the attorneys."

after a settlement in the underlying litigation,[3] (*see id.* ¶ 1).  The court has scheduled a hearing on these issues for April 22, 2013.  (*See* doc. 256 ¶ 5.)  In the meantime, intervenors have filed a Motion for Partial Summary Judgment against the claim filed by the Friedman firm, alleging that it is not a proper party to bring a claim under Alabama Code § 34-3-61 (1975), the statute which governs attorney liens on client funds.  (*See* doc. 248 at 1.)  Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that Intervenors' Motion for Partial Summary Judgment, (doc. 248), is due to be granted.

## I. <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met its burden, the non-moving party must go beyond the pleadings and show that there is a genuine issue of fact for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[3]  When discussing the "underlying litigation," the court is referring to this case before the settlement of the contract dispute regarding the Colonial Pipeline.

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Therefore, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) (citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)). Therefore, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## II.  STATEMENT OF FACTS AND PROCEDURAL BACKGROUND[4]

### General Background

The current dispute arose out of a breach of contract action filed by Twin Pines Coal Company, Inc. ("Twin Pines Coal") and RGGS Land and Minerals, Ltd., L.P. ("RGGS") against Colonial Pipeline Company ("Colonial") on July 14, 2009.  (*See* doc. 1.)  The two plaintiffs alleged that Colonial had failed to pay an invoice issued by Twin Pines Coal for the value of coal that it could not mine because of limits established by Colonial in order to

---

[4]  As required when evaluating a motion for summary judgment, the court states the facts and all reasonable inferences arising from them in the light most favorable to the attorneys, the nonmoving party.  *See, e.g.*, *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

protect its pipeline.  (*See id.* ¶¶ 7-22.)[5]  After the filing of the action against Colonial, on December 22, 2012, Twin Pines Coal executed an agreement with Twin Pines, LLC ("Asset Purchase Agreement"), (*see* doc. 237-13; doc. 225 ¶ 1), where Twin Pines, LLC purchased substantially all of the assets[6] of Twin Pines Coal and gained a one-half interest in the recovery from the underlying litigation, (*see* doc. 222 ¶¶ 3-4; doc. 225 ¶ 1).  However, under the Agreement, Twin Pines Coal still retained a one-half interest in any recovery from the underlying litigation.[7]  (Doc. 225 ¶ 1.)  On May 12, 2012, all parties to the contract dispute signed a settlement agreement and general release, which resolved the lawsuit (including all potential future claims) and created a settlement fund.  (*See* doc. 237-8; doc. 225 ¶ 2).

### Involvement of the Attorneys

Before the underlying litigation began, Twin Pines Coal had been consulting the Jackson firm regarding issues with Colonial.  (Doc. 270-4 at 15-18.)  At some point, Eddie Jackson ("Jackson") contacted Jeff Friedman ("Friedman") at the Friedman firm on behalf

---

[5]  RGGS was involved in the litigation because it owned the mineral rights to the area at issue in the underlying lawsuit, (*see* doc. 185-8), which it later leased to Twin Pines Coal, (*see* doc. 185-9).

[6]  After Twin Pines, LLC purchased assets from Twin Pines Coal, Twin Pines Coal also transferred and assigned certain rights under the leases and the pending lawsuit to Twin Pines II, LLC, ("Twin Pines II") an affiliate of Drummond Company, Inc. ("Drummond").  (Doc. 237-8 at 3).  Because Twin Pines, LLC and Twin Pines II are both involved in the attorney fee dispute currently before the court, the court will refer to them collectively as "intervenors" in order to avoid confusion.

[7]  It is worth nothing that the one-half interest in the recovery retained by Twin Pines Coal did not include recovery for the settlement of any future claims.  (*See* doc. 225 ¶ 2.)  Funds from the settlement of future claims belong only to intervenors.  (*Id.*)

4

of Twin Pines Coal. (Doc. 259-1 at 21; doc. 270-4 at 24-25.) Friedman testified that though

he was first contacted by Twin Pines Coal, it was eventually decided that he would "best

serve the interest of all the plaintiffs by being lead litigation counsel for RGGS." (Doc. 259-

1 at 22.) Accordingly, the attorneys and their respective clients ultimately decided to split

up the formal representation of RGGS and Twin Pines Coal, (*see* doc. 260 at 14, ¶ 6; doc.

262-2 ¶ 4), and Friedman was engaged as RGGS's attorney before the July 15, 2009 filing

of the lawsuit, (doc. 259-1 at 20). Among other reasons, the split in representation was a

strategic decision to allow the plaintiffs in the underlying lawsuit (Twin Pines Coal and

RGGS) to have two opening statements and two chances to cross-examine every witness.

(Doc. 248 at 4, ¶ 7; doc. 260 at 14-15, ¶ 7.) Friedman testified that there was a "community

of interest" between Twin Pines Coal and RGGS,[8] (doc. 259-1 at 22), but that his client was

RGGS, (*id.* at 32). He further explained that he defined his "client" as the party who he

appeared for in the lawsuit. (*Id.* at 23.)

It is undisputed that attorneys from the Friedman firm—including Friedman

himself—entered an appearance *only* on behalf of RGGS in the underlying litigation.[9] (*See*

---

[8] He also testified that Twin Pines, LLC and Twin Pines II became part of the "community of interest." (Doc. 259-1 at 48.)

[9] The court also agrees with intervenors that it can take judicial notice of the fact that Friedman and attorneys from his firm appeared only for RGGS on its docket. (*See* doc. 8; doc. 9; doc. 36; doc. 228); *see also Cash Inn of Dade, Inc. v. Metro. Dade Cnty.*, 938 F.2d 1239, 1243 (11th Cir. 1991) ("A district court may take judicial notice of public records within its files relating to the particular case before it or other related cases." (citing *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir. 1989); *St. Louis Baptist Temple v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979))).

doc. 260 at 7, ¶ 2; *id.* at 8-9, ¶ 3.)    However, though Friedman technically represented RGGS, Twin Pines Coal paid both the Jackson firm's and the Friedman firm's hourly bills.[10] (Doc. 259-1 at 23; *see also* doc. 270-4 at 27.)  George Barber ("Barber"), the President of Twin Pines Coal, stated in his Affidavit filed in support of the attorneys' Opposition, (doc. 260), that he hired both firms and "intended to pay both firms pursuant to [the agreement with the attorneys] for their work even if it meant paying RGGS'[s] fees without contribution."  (Doc. 262-2 ¶ 4.)  Later, after Twin Pines Coal had executed the Asset Purchase Agreement with Twin Pines, LLC, the attorneys' hourly bills were paid by intervenors.  (Doc. 259-1 at 47-48; doc. 270-4 at 242.)

Once the settlement agreement was executed, the attorneys filed their Claim for Attorneys' Fees and Statutory Lien, (doc. 222), against the portion of the settlement monies recovered by Twin Pines Coal and intervenors, (*id.* ¶ 2-3).[11]  They allege that their claim for

---

[10]  In addition to the payment of hourly bills, the Jackson and Friedman firms allege that there was a contract between their firms and Twin Pines Coal to pay a 28% contingency fee on any recovery over $9,000,000, which the firms would split.  (Doc. 237-2 at 10; doc. 260 at 5-6; *see also* doc. 259-1 at 24-25.)  Whether this purported contract between Twin Pines Coal and the attorneys is enforceable, and whether it was assumed by intervenors when Twin Pines, LLC entered into the Asset Purchase Agreement with Twin Pines Coal, are the main issues to be addressed upon hearing the Claim for Attorneys' Fees, (doc. 222), and Motion for Court Ordered Award of Attorneys' Fees, (doc. 226).  Therefore, the court need not discuss the issue at this juncture.  Though the parties have presented substantial evidence on summary judgment regarding the alleged contract and the circumstances surrounding it, the only issue before the court on the Motion for Partial Summary Judgment, (doc. 248), is whether the Friedman firm is precluded from filing a lien under Alabama Code § 34-3-61, which does not require a determination of whether a contract existed.

[11]  Though the Claim itself does not make it entirely clear whose portion of the fund attorneys filed against, (*see* doc. 222), later filings with the court clarify that the attorneys' claim is against the entire settlement fund, (*see* doc. 225 ¶ 5), which now consists of only Twin Pines

an attorney's lien under Alabama Code § 34-3-61 is supported by both contract and quantum meruit.  (*Id.* ¶ 5.)  Subsequently, the attorneys also filed a Motion for Court Ordered Award of Attorneys' Fees, (doc. 226), and Brief in Support, (doc. 237-2), where they request that the court declare the amount of attorneys' fees that they are entitled to and order that the funds be disbursed pursuant to Alabama Code § 34-3-62 (1975),[12] (doc. 226 at 1).  Intervenors have filed a Motion for Partial Summary Judgment on the § 34-3-61 claim filed by the Friedman firm, alleging that it is not a proper party to bring a claim for a lien on the settlement fund under Alabama Code § 34-3-61 because (1) Twin Pines Coal and intervenors were never its "client" as required by the statute and (2) Friedman was the attorney of record only for RGGS.  (*See* doc. 248 at 5-6.)

### III. DISCUSSION

At the outset the court notes that it is appropriate for federal courts to entertain claims under state statutes permitting attorneys' liens.  *See Panola Land Buying Ass'n v. Clark*, 844 F.2d 1506, 1514 (11th Cir. 1988) ("Federal courts sitting in a state enforce that state's statute creating attorneys' liens.").  Consequently, the court will next consider whether the Friedman firm's claim under § 34-3-61 is proper.

―――――――――――――

Coal's and intervenors' respective interests, (*see* doc. 248 at 2; doc. 226 ¶ 1-2).  RGGS and United States Steel Corporation ("U.S. Steel"), parties in the underlying litigation, have already received distribution of their portion of the settlement fund because no claim was made against their interests.  (Doc. 248 at 2.)

[12]  This provision of the Code sets forth a procedure to follow when an attorney disputes the amount of his compensation.  *See* Ala. Code § 34-3-62 (1975).

**A.  Alabama Code § 34-3-61**

This Motion for Partial Summary Judgment presents a very narrow issue.  That is, can the Friedman firm bring a claim for a charging lien[13] under Alabama Code § 34-3-61?  The answer is no.  Though the parties—particularly the attorneys—have addressed issues far beyond the scope of this question, the court will adhere to the core issue and address the additional questions regarding the enforceability of the attorneys' alleged contract with intervenors during the April 22 hearing.

In their Motion for Partial Summary Judgment, (doc. 248), intervenors argue primarily that the Friedman firm was representing only RGGS, and that neither Twin Pines Coal nor

---

[13]  Though the statute does not specifically refer to the lien as a charging lien, a charging lien is "[a]n attorney's lien on a claim that the attorney has helped the client perfect, as through a judgment or settlement."  Black's Law Dictionary 1006 (9th ed. 2009).  It is generally restricted to funds that the attorney's services aided in producing.  *See Hale v. Tyson*, 79 So. 499, 500 (Ala. 1918).  It can be contrasted with a retaining lien, which "attaches to [any] papers, books, documents, securities, or moneys that come into the *attorney's possession* . . . in the due course of his professional employment [and] . . . the attorney has the right to retain [the property] as against the client, his assignments, or attachments, until the attorney's lien for legal services is paid."  *Hale*, 79 So. at 500.  The terms of the Alabama statute do not make explicitly clear which type of lien it covers.  And though, reading the terms carefully, it appears to operate as a retaining lien, a case interpreting an earlier version of the statute notes that "[i]n this state we have a declared statutory lien of attorneys at law, embracing the two classes . . . the retaining lien and the charging lien.  The statute covers the whole subject . . . ."  *Id.* at 501.  Moreover, though they have not explicitly discussed it, later Alabama cases have permitted charging liens under § 34-2-61(a).  *See, e.g.*, *Harlow v. Sloss Indus. Corp.*, 813 So. 2d 879, 889-90 (Ala. Civ. App. 2001) (affirming award of fees to attorney who brought a claim for a statutory lien against client's settlement fund).  Because the claimed lien is brought pursuant to a purported contingency fee agreement against settlement funds that the attorneys aided in producing, it operates as a charging lien.

intervenors were ever "clients" of Friedman.  (*See* doc. 248 at 2, 6.)[14]  However, intervenors only briefly make the winning argument (though they more thoroughly address the issue in their Reply)—that is, that "the right of an attorney to intervene or assert a lien after settlement is available only to the attorney of record . . . ."  (*Id.* at 6 (quoting *Eaton v. Keller Plumbing Co.*, 587 So. 2d 338, 339 (Ala. Civ. App. 1991)).)  The attorneys respond to these arguments with evidence to show that they had a contingency fee contract with Twin Pines Coal.  (*See* doc. 260.)  They argue this proves that Twin Pines Coal, and thus, intervenors, were "clients" of the Friedman firm; therefore, they claim that Friedman has properly brought a claim under § 34-3-61.  (*Id.* at 6, 13, 23.)  Moreover, they contest intervenors' claim that Friedman must have been an attorney of record for Twin Pines Coal, stating that "[t]he protection afforded by the statute is not limited to attorneys of record at the time of settlement or when judgment is rendered."  (Doc. 260 at 24 (quoting *Carnes v. Shores*, 318 So. 2d 305, 307 (Ala. Civ. App. 1975)).)  The court agrees with intervenors that the Friedman firm is not a proper party to bring a claim under § 34-3-61 because Friedman was not an attorney of

---

[14]  This argument is made based upon the terms of § 34-3-61(a), which states:

(a) Attorneys-at-law shall have a lien on all papers and money of ***their clients*** in their possession for services rendered to them, in reference thereto, and may retain such papers until the claims are satisfied, and may apply such money to the satisfaction of the claims. Ala. Code § 34-3-61(a) (emphasis added).

record for Twin Pines Coal at any time during the underlying litigation.[15]

Under the Alabama attorney's lien statute, a claim for a charging lien allows a very narrow remedy. Alabama case law on the subject is not extensive, but after a thorough review, the general rule is clear: an attorney must have been the attorney of record for the client whose funds he or she wishes to put a lien on at some point during the litigation. *See Triplett v. Elliott*, 590 So. 2d 908, 910 (Ala. 1991) (affirming trial court award of attorney fees under lien statute to attorney who had "worked on the present case for . . . two and one-half years. . . . [,] entered an appearance on [the client's] behalf, took all of the depositions, issued subpoenas, prepared all of the pleadings, prepared interrogatories and requests for production, attended pretrial conferences, filed exhibit and witness lists, and attended the call of the trial docket . . . ."); *Boykin Timber & Farm Res., Inc. v. Nix*, 438 So. 2d 294, 295 (Ala. 1983) ("Only attorneys of record, the practicing attorneys who actually sign pleadings and actively participate in the crucial phases of their clients' litigation, are proper parties to enforce a lien under the authority of . . . § 34-3-61."); *McBride v. Ellard*, 142 So. 2d 895, 897 (Ala. 1962) (stating that it is a requirement for intervening attorney seeking a lien out of settlement funds to allege that he is an attorney of record in the bill of intervention); *Gulf States Steel Co. v. Justice*, 87 So. 211, 212-18 (Ala. 1920) (discussing how, though three

---

[15] The attorneys make the additional argument that "[intervenors] w[ere] never a party to this litigation and therefore, the Friedman firm could not file a Notice of Appearance on [their] behalf." (Doc. 260 at 4; *see also* doc. 260 at 26.) However, Twin Pines Coal *was* a party, and intervenors its successor in interest. As discussed earlier, the Friedman firm never entered an appearance on behalf of Twin Pines Coal; therefore, this argument is not helpful to the attorneys.

attorneys were employed by contract, because only one attorney had been the attorney of record, he was the only proper attorney to file a lien against the settlement funds); *Eaton v. Keller Plumbing Co.*, 587 So. 2d 338, 339 (Ala. Civ. App. 1991) (disallowing general partner of two no longer existing law firms from claiming a lien under § 34-3-61 because she "was not attorney of record at the time," and was thus "not a proper party to claim or enforce a lien" under the statute); *see also, e.g.*, *In re McCrackin*, BK 04-73189-CMS-13, 2007 WL 1526435, *2-4, (Bankr. N.D. Ala. May 24, 2007) (applying Alabama lien statute and allowing recovery for attorney who had filed suit for plaintiff (i.e., attorney of record) and who had been retained under a contingency fee agreement, but whose employment had been terminated before settlement of the case); *Harlow*, 813 So. 2d at 883, 890 (allowing attorney admitted to appear pro hac vice to recover under the statute); *Goldberg & Assocs., P.C. v. Donohoe*, 777 So. 2d 144, 144-46 (Ala. Civ. App. 2000) (remanding case to trial court to determine amount owed to former attorneys of record who intervened and sought recovery under § 34-3-61); *Carnes v. Shores*, 318 So. 2d 305, 306-08 (Ala. Civ. App. 1975) (allowing former attorney of record to intervene in a lawsuit to recover from settlement funds under a predecessor statute to § 34-4-61).

This review of Alabama case law both clarifies the current state of Alabama law and sheds light on the somewhat conflicting rules cited by the parties.  On the one hand, as discussed above, intervenors cite the rule that "the right of an attorney to intervene or assert a lien after settlement is available only to the attorney of record *at the time of settlement.*"

(Doc. 248 at 6 (quoting *Eaton v. Keller Plumbing Co.*, 587 So. 2d 338, 339 (Ala. Civ. App. 1991) (emphasis added)).)   While on the other, the attorneys state that "[t]he protection afforded by the statute is *not limited* to attorneys of record at the time of settlement or when judgment is rendered."  (Doc. 260 (quoting *Carnes v. Shores*, 318 So. 2d 305, 307 (Ala. Civ. App. 1975)(emphasis added)).)   The court agrees that the latter rule is a correct one, but it must be put into context.[16]

The key is that the rule developed in cases where attorneys who had once been attorneys of record[17] (typically under a contingency fee arrangement) were terminated without cause by their clients, who then resolved the case and would have avoided having to pay the agreed upon attorney's fee.   *See Carnes*, 318 So. 2d at 307 ("[M]ost cases of intervention by attorneys to protect their lien occur when clients attempt by collusion or settlement to avoid paying fees."); *see also, e.g.*, *Triplett*, 590 So. 2d at 909-10 (affirming

---

[16]   The court has traced the development of case law interpreting § 34-3-61 in Alabama, and has found that though the Alabama Supreme Court did state the rule cited by intervenors in *McBride v. Ellard*, 142 So. 2d 895, 897 (Ala. 1962), and it was eventually cited by the Alabama Court of Civil Appeals, *see Eaton*, 587 So. 2d at 339, the court's more recent statement in *Triplett v. Elliott*, 590 So. 2d 908, 910 (Ala. 1991), that the statute's protection is not limited to attorneys of record at the time of settlement or when judgment is rendered, controls.  This is essentially the rule cited by the attorneys.

[17]   The cases do not explicitly state that the attorneys were "attorneys of record," because it is typically a non-issue.  However, language can be found to show that in each case, the attorney seeking to recover was once an attorney of record.  *See, e.g.*, *Triplett*, 590 So. 2d at 910 (Ala. 1991) (noting that attorney "entered an appearance," "attended pretrial conferences," and "filed exhibit and witness lists"); *Carnes*, 318 So. 2d at 306 (attorney represented client and "filed a petition and other pleading on her behalf"); *In re McCrackin*, 2007 WL 1526435, at *2 (attorney "filed a suit in state court which was then removed to federal court" and filed documents for client).

trial court's award of attorney's fees under attorney's claim for a lien after he was terminated by client before case resolution); *Gulf States Steel Co.*, 87 So. at 212 (only attorney of record was permitted to intervene in case where attorneys alleged that client had "entered into negotiations with the defendant, and fraudulently conspired with defendant for a compromise settlement").

Finding the notion of fraud on the client's part particularly reprehensible because "the purpose of the attorney's lien statute . . . is to protect the attorney from loss of his investment in time, effort, and learning, and the loss of funds used in serving the interest of the client," *Triplett*, 590 So. 2d at 910 (quoting *Carnes v. Shores*, 318 So. 2d 305, 307 (Ala. Civ. App. 1975)), Alabama courts have allowed former attorneys of record to intervene in such situations. *See Harlow*, 813 So. 2d at 889 ("[W]here a client settles his litigation in a manner that intentionally, wantonly, or fraudulently deprives his attorney of a fee, the courts will not allow the party to destroy the attorney's right to a lien for his fee."). Thus, the rule cited by the attorneys stating that the protection afforded by § 34-3-61 is not limited to the attorney of record at the time of settlement was created to address the specific problem discussed above and to allow former attorneys of record to recover. However, it is clear that the attorney still must have been the attorney of record for the client at some point during the pendency of the case.[18]

---

[18]   Though it may seem harsh, this type of rigid rule is not unheard of. Many other states maintain similar requirements for attorney charging liens. *See, e.g.*, *Hogben v. Wyndham Int'l, Inc.*, 05-20944-CIV-TORRES, 2007 WL 2225970, *10 (S.D. Fla. Aug. 1, 2007) (applying

Given that this is the rule, and because it is undisputed that no one from the Friedman firm was ever an attorney of record for Twin Pines Coal, (*see* doc. 260 at 7, ¶ 2; *id.* at 8-9, ¶ 3), it cannot bring a lien pursuant to § 34-3-61.[19]  However, the court stresses that this does not mean relief is entirely foreclosed for the Friedman firm.  Not only are other remedies available such as a new action in breach of contract, quantum meruit, or possibly § 34-3-62,[20] but if a contract is found to exist, and the Jackson firm prevails, it will be responsible to the Friedman firm for whatever amount the Friedman firm is owed under the contract.  This is clear under Alabama law.  *See Boykin*, 438 So. 2d at 295-96 ("We . . . hold that in either a prejudgment or postjudgment statutory lien enforcement proceeding, only the attorney of record may recover from the client the full amount stated in the employment contract, ***but he recovers subject to a duty to account to other attorneys pursuant to the contract***." (citing *Gulf States Steel Co. v. Justice*, 87 So. 211, 217-18 (Ala. 1920) (emphasis added))).

———————————————

Florida law and discussing how attorney's charging lien could not attach to property in case because, though he was attorney of record for client in other, similar cases, he was not attorney of record in the case before the court); *Jaghab & Jaghab v. Marshall*, 681 N.Y.S.2d 330, 331 (N.Y. App. Div. 1998) ("Since the petitioner law firm [did not] appear[] as attorney of record in an action or proceeding (Judiciary Law § 475) . . . it was not entitled to a charging lien under the Judiciary law.").

[19]  It is also worth noting that though no one from the Jackson firm was ever an attorney of record for intervenors (who were never formally part of the underlying lawsuit, but who have since intervened to protect their interest in the settlement fund (*see* doc. 225 ¶¶ 1-3, 5)), intervenors are Twin Pine Coal's successor in interest to certain portions of the recovery in the lawsuit, (*see* doc. 225 ¶ 1).  Therefore, the fact that the attorneys have filed a Claim against both intervenors and Twin Pines Coal's interests in the settlement fund is immaterial.

[20]  However, in this suit there are currently issues with the attorneys' Motion under § 34-3-62, which the court discusses in part B.

14

**B.  Alabama Code § 34-3-62**

The attorneys also bring a claim under Alabama Code § 34-3-62 (1975).  Given that intervenors moved for summary judgment only as to the Friedman firm's claim under § 34-3-61, the court ordinarily would not address § 34-3-62 at this time.  However, the contention that the statutes are somehow interconnected, and the attorneys' responsive arguments to intervenors' Motion, forces the court to consider it now.  The attorneys respond to intervenors Motion for Partial Summary Judgment as to § 34-3-61 by arguing in part that "[s]ection 34-3-62, separate and apart from the lien statute (§ 34-3-61), establishes the statutory procedure for an attorney to follow when a disagreement or controversy arises between the attorney and any other person respecting the amount of compensation to which the attorney is entitled by contract or otherwise." (Doc. 260 at 25 (quoting § 34-2-62).)  They further state that "[t]he terms of § 34-3-62 require neither a formal attorney-client relationship, nor a contract between the attorney and the person disputing the amount of attorneys['] fees owed." (*Id.*)  Intervenors reply that § 34-3-62 cannot be a claim that stands on its own because the attorneys themselves have argued that it is the procedure to be used by the court for determining the amount due under their alleged lien.  (Doc. 270 at 14.)  They further argue that if the attorneys *had* brought their Motion under § 34-3-62 separately, it could not be heard by this court, based on the terms of the statute.  (*Id.*)  The court agrees that any claim under § 34-3-62 does not prevent a grant of summary judgment as to the Friedman firm's claim for a charging lien under § 34-3-61.

15

Section 34-3-62 states that

Whenever any disagreement or controversy arises between an attorney-at-law and any other person respecting the amount of the compensation to which he or she is entitled by contract or otherwise and his or her retention of the same out of any funds in his or her hands, such attorney may by motion in the circuit court or court of like jurisdiction, *of the county of his or her residence*, of which such other person shall have notice, obtain an order of the court that a certain amount is due under such contract or would be reasonable compensation for his or her services; and, when such motion is made and order obtained, such attorney shall not be subject to prosecution, suspension, or removal under this chapter or other penalty therefor; but nothing herein contained shall affect or destroy any civil action to which any person would be entitled against such attorney respecting the same, or any criminal prosecution to which the accused would be otherwise liable.

§ 34-3-62 (emphasis added).  Much like § 34-3-61, case law interpreting the statute is not extensive.  Specifically, there is not one single case—Alabama or otherwise—which cites to § 34-3-62.  Based on the terms of the statute, its title ("[p]rocedure when amount of compensation disputed"), and the very few citing references for § 34-3-62,[21] it seems clear that § 34-3-62 provides a method for resolving disputes between attorneys and clients as to amount of compensation.  *See, e.g.*, Petition for Writ of Mandamus, *Ex Parte Stuart C. Dubose*, No. 1051518, 2006 WL 6310560, *9 (Ala. 2006) ("[S]ection 34-3-62 established a simple summary procedure for determining . . . the amount of compensation to which the attorney is entitled.").  Given this, the court agrees that it may be possible for § 34-3-62 to work in tandem with § 34-3-61 in certain cases; however, this is not one of them.  The court

---

[21]  The citing references consist of only a handful of secondary sources (each of which only briefly mentions § 34-3-62) and a petition for writ of mandamus to the Alabama Supreme Court, which the attorneys cite in their Opposition.  (Doc. 260 at 25.)

also questions whether a controversy invoking § 34-3-62 may be properly brought in this court.[22]  After a thorough review of § 34-3-62 and Alabama case law, the court is of the opinion that while § 34-3-62 technically allows attorneys another avenue of relief in appropriate cases, it is largely an irrelevant statute—one which is not necessary to recover under § 34-3-61.

First, the court has come to this conclusion because precedent reveals that it can determine the amount of the claimed lien under § 34-3-61 without entertaining a motion under § 34-3-62.  For example, by bringing a claim under § 34-3-61, the court must naturally analyze whether the alleged contract is enforceable so that the attorneys are entitled to a lien and compensation.  If the alleged contract is enforceable, the amount of the lien will correspond to the amount specified in the contract.  Additionally, if the court entertains the attorneys' quantum meruit claim, it will—as an extension of that—need to determine how much the alleged "services rendered," to intervenors were worth.  § 34-3-61.  This is not unusual; in fact, it is routine among the Alabama cases citing to § 34-3-61.  *See, e.g.*, *Triplett*, 590 So. 2d at 909-10 (affirming trial court's determination of how much attorney's lien should be for in quantum meruit); *Boykin*, 438 So. 2d at 295-96 (stating attorney of record may recover the amount stated in the employment contract); *Bell v. Bell*, 108 So. 375, 377 (Ala. 1926) (observing that the attorney's lien statute "authorizes an intervening attorney to

---

[22]  As discussed later, the court cannot yet resolve this issue, but it is clear that a claim under § 34-3-62 alone will not facilitate an attorney's lien under § 34-3-61.

continue the litigation *for the purpose of establishing the amount of his fee* and enforcing its collection" (emphasis added)); *Gaines, Gaines & Gaines, P.C. v. Hare, Wynn, Newell & Newton*, 554 So. 2d 445, 445-48 (Ala. Civ. App. 1989) (affirming trial court's award in quantum meruit to attorneys who had filed lien); *Carnes*, 318 So. 2d at 308 (attorney who filed lien "is entitled . . . to establish *the amount of fee due* from the client either from contract or on quantum meruit for value of services rendered up to the time of intervention" (emphasis added)). Accordingly, the attorneys need not have filed their Motion under § 34-3-62 in order for the court to determine the amount of the charging lien.

On top of the existing case law, a review of the history of § 34-3-62 has helped the court come to this conclusion. Though Alabama does not publish its legislative history, the court has looked through prior versions of the Alabama Code in an attempt to find the origins of § 34-3-62.[23] The attempt was unsuccessful, but revealed that the statute was in place as early as 1907. *See* Ala. Code § 3009 (1907). This alone is telling, since the statute (and all prior versions that the court has reviewed) has not one case referencing it.[24] Consequently,

---

[23] In contrast, case law makes the origin of § 34-3-61 clear. *See Gulf States Steel Co.*, 87 So. at 215 ("The statute providing for the lien of attorneys at law on the pending suit . . . was taken from the Georgia statutes . . . ."). The court has reviewed Georgia Statutes, and the state does not currently have a comparable statute to § 34-3-62 in place.

[24] The lack of § 34-3-62 citing references since as far back as 1907 bolsters the court's conclusion that § 34-3-61 does not require § 34-3-62—i.e., that the statutes were not necessarily meant to be used together. This is especially true given that the former has been at least occasionally cited by Alabama courts. Moreover, it further makes sense because neither statute refers to the other, and § 34-3-62 covers much broader circumstances, including cases of "any disagreement or controversy" arising between an attorney and "any other person." § 34-3-62.

18

the logical conclusion is that § 34-3-62 simply has not been used because it has never been needed. As discussed above, an attorney may make a claim for a lien under § 34-3-61, then prove the amount of compensation due under the contract or in quantum meruit. Thus, he or she need not resort to § 34-3-62. Additionally, if a new action is filed, the attorney may simply file a breach of contract claim or a claim in quantum meruit—again, making § 34-3-62 unnecessary.

Second, as to § 34-3-62 operating alone (entirely apart from § 34-3-61), it is questionable as to whether the attorneys may bring such a claim. As intervenors observe, § 34-3-62 limits the court in which any motions are brought to that "of the county of [the attorney's] residence." § 34-3-62. Accordingly, if, as intervenors argue, Jackson does not reside in Jefferson County, then it is true that his claim against intervenors under § 34-3-62 is not properly before this court. The same would be true for Friedman, should the court determine that he resides outside of Jefferson County. However, since the court has not been presented any evidence on either of these issues, it will not decide them at this time.

Moreover, even if the Friedman firm is able to bring a claim under § 34-3-62, this statute alone will not salvage its claim for a lien under § 34-3-61. Since the issue of whether the firm may bring a § 34-3-62 claim is one that still must be decided, it is worth making clear at this point that should either of the attorneys reside in Jefferson County and have a claim under § 34-3-62 properly before the court, the result would be only that the court could determine the *amount* the respective attorney is owed under the alleged contract with

19

intervenors through a court order.  Any such determination would not result in a lien on the settlement funds under § 34-3-61.  As noted earlier, an attorney's lien is a narrow remedy that may only be brought if certain criteria are met.  Because the Friedman firm was never attorney of record for Twin Pines, it does not meet the required criteria.  Thus, ultimately, the attorneys' Motion based on § 34-3-62 does nothing to help prevent a grant of summary judgment in favor of intervenors as to the Friedman firm's § 34-3-61 claim.

### C.  Common Fund Doctrine

Lastly, the attorneys argue that the common fund doctrine precludes a granting of summary judgment in favor of intervenors.  (Doc. 260 at 30.)  Intervenors have not replied to the argument.  Upon a review of the Alabama case law, the court finds that the common fund doctrine cannot apply to prevent a grant of summary judgment on the issue of whether the Friedman firm is a proper party to bring a lien under § 34-3-61.  The doctrine encompasses the notion that "where one litigant has proceeded alone at his own expense and has either created, protected, or preserved a fund in which others are entitled to share," he is entitled to recover attorney's fees out of the common fund.  *Williams v. Williams*, 424 So. 2d 638, 640 (Ala. Civ. App. 1982) (quoting *Troy Bank & Trust Co. v. Brantley*, 82 So. 2d 618, 624 (Ala. 1955) (internal quotation marks omitted)).  Whether the attorneys will be entitled to recover under the doctrine is an issue to be addressed later, when the court addresses whether the attorneys can recover under the contract, in quantum meruit, or

20

otherwise.[25]  It has no bearing on the issue that is before the court now.

## IV.  CONCLUSION

For the foregoing reasons, the court is of the opinion that Intervenors' Motion for

Partial Summary Judgment, (doc. 248), is due to be granted.  An order granting intervenors'

Motion will be entered contemporaneously with this Opinion.

**DONE**, this19th day of February, 2013.

Sharon Lovelace Blackburn

_____

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE

---

[25]  The court does note, however, that there are substantial differences between the case here and the cases cited by the attorneys to support their argument that the common fund doctrine applies.  (*See* doc. 260 at 30.)